**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AMBER FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-514-D |
| | ) | |
| WOVENLIFE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 23]. Plaintiff filed a response [Doc. No. 24], and Defendant replied [Doc. No. 25]. The matter is fully briefed and at issue.

**BACKGROUND**

This lawsuit arises from Plaintiff's employment with, and subsequent termination from, Defendant WovenLife, Inc. ("WovenLife"). During her employment with WovenLife, Plaintiff was diagnosed with breast cancer. As would be expected, Plaintiff began to experience health complications associated with her cancer diagnosis. According to Plaintiff, these complications impacted her ability to effectively do her job. Plaintiff brought this issue to the attention of her superiors at WovenLife and asked that accommodations be made so that she could continue working.

The parties dispute how Plaintiff's request for accommodations was handled and why Plaintiff was ultimately terminated. Plaintiff claims WovenLife discriminated against her based on her cancer diagnosis, failed to provide accommodations that would allow her

to keep working, and retaliated against her for requesting numerous accommodations. On the other hand, WovenLife contends that it did everything it could to accommodate Plaintiff and her cancer diagnosis, but it was Plaintiff's refusal to engage in a collaborative process regarding a new position, along with the elimination of Plaintiff's prior position, that ultimately led to her termination.

Plaintiff filed this lawsuit on June 21, 2022 and asserts three claims under the Americans with Disabilities Act (the "ADA"): (1) retaliation; (2) discrimination; and (3) failure to accommodate. WovenLife filed the instant motion on July 20, 2023 and argues that it is entitled to summary judgment on each of Plaintiff's claims.

## UNDISPUTED MATERIAL FACTS[1]

WovenLife provides services for young and old, abled and differently abled persons, including a child development program, adult day center, and medical rehabilitation services. WovenLife hired Plaintiff to work in its child development program as a lead

[1] This statement includes material facts that are supported by the record and not opposed in the manner required by FED. R. CIV. P. 56(c)(1) and LCvR56.1(d). All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to FED. R. CIV. P. 56(e)(2) and LCvR56.1(e). Here, in numerous instances, Plaintiff purports to dispute a fact, but fails to cite specific evidence or argument that controverts that fact. For example, WovenLife states that "in January 2021, [Mr. Wood] and [Ms. Insomya] asked [Plaintiff] to keep a log reflecting which dates she was working from home, which dates she was taking sick leave, and what the plan was. The purpose of this log was to ensure everyone was on the same page regarding whether particular days should or should not be treated as sick days." Def.'s Mot. Summ. J. at 8. In response, Plaintiff states that the "log was discriminatory because only the Plaintiff was required to submit a log." Pl.'s Resp. at 7. Plaintiff's contention that the log was discriminatory is mere argument that does nothing to undermine WovenLife's factual assertion.

Further, any fact stated by a party that is not supported by the party's citation to the record is disregarded.

teacher in June 2020. In the fall of 2020, as schools across Oklahoma remained closed during the COVID-19 pandemic, WovenLife partnered with the Oklahoma Department of Health and Human Services to create the Hope Center. Through the Hope Center, WovenLife intended to provide resources to Oklahoma children, including technology for use in virtual learning, meals and snacks, mental and behavioral health professionals, and a weekend backpack program.

Believing that the upcoming opening of the Hope Center and corresponding influx of additional children would necessitate a second assistant director for its child development center, WovenLife created a new position and promoted Plaintiff to assistant director. Shortly thereafter, in November 2020, the Hope Center opened and began enrolling children. However, attendance at the Hope Center was never as high as WovenLife anticipated.

In late 2020 or early 2021, Plaintiff informed David Wood, WovenLife's then-CEO, that she had been diagnosed with cancer. In January 2021, Plaintiff asked Mr. Wood and Lindsay Insomya, WovenLife's Director of Children's Services, if she could work from home the day following each of her chemotherapy treatments. Mr. Wood told Plaintiff that as long as she felt well enough to work from home, she could do so. If Plaintiff were so sick that she could not work, however, she would need to take sick leave. Plaintiff typically felt ill for 2-3 days after each chemotherapy treatment, but outside of that window of time, she was not so ill that she could not come to work. Plaintiff usually scheduled her treatments for Fridays so she would be well enough to come to work on Monday.

In January 2021, Mr. Wood and Ms. Insomya asked Plaintiff to create a calendar reflecting what dates she had treatments scheduled and what dates she anticipated she might need to work from home as a result of her treatments. WovenLife requested this information because it needed to ensure it met the required teacher-child ratio at its facility and needed to plan ahead to be sure sufficient staff would be present each day for WovenLife to remain compliant. Also in January 2021, Mr. Wood and Ms. Insomya asked Plaintiff to keep a log reflecting which dates she was working from home, which dates she was taking sick leave, and what the plan was. The purpose of this log was to ensure everyone was on the same page regarding whether particular days should or should not be treated as sick days. Plaintiff never prepared the requested calendar reflecting scheduled treatments, nor did she ever utilize the log she received from WovenLife for this purpose.[2]

In January 2021, when Ms. Insomya questioned Plaintiff about the log and calendar, Plaintiff requested the phone number for WovenLife's human resources department. Because of its small size, WovenLife did not have a separate human resources department or any designated human resources personnel. Instead, WovenLife's CEO fulfilled that role and made any necessary human resources decisions. During Plaintiff's employment, Mr. Wood and Keith McCombs made all human resources decisions on behalf of WovenLife.

[2] During this timeframe, because of misunderstandings and miscommunications that had occurred when Plaintiff texted Ms. Insomya and Mr. Wood about her treatment schedule and sick days, Plaintiff was asked not to communicate with WovenLife management via text messages or e-mails but instead to communicate in person or via telephone to ensure there was no confusion.

Plaintiff was informed on numerous occasions that Mr. Wood and/or Mr. McCombs made human resources decisions on behalf of WovenLife.

By April 2021, it had become clear that the Hope Center would be closing, and WovenLife terminated a number of employees who had been hired to work at the Hope Center. The Hope Center officially closed its doors in May 2021. Also, by April 2021, it had become clear that WovenLife did not need the assistant director position it had created in anticipation of an influx of children in the Hope Center. Instead, WovenLife needed an executive assistant to help run and otherwise manage the office. As a result, WovenLife created a new executive assistant position, which mirrored many of the duties that Plaintiff had been performing as assistant director. Because WovenLife was eliminating Plaintiff's existing position, it offered her the newly created executive assistant position. It carried the same salary and benefits as Plaintiff's assistant director position.

When Mr. McCombs and Mr. Wood offered the executive assistant position to Plaintiff, she expressed concern about performing some of the duties associated with the position. Therefore, Mr. McCombs asked Plaintiff to review the job description and mark which duties she felt she could not perform at that time and where she might want to request an accommodation. Despite numerous requests, Plaintiff never fully provided the necessary information to transition her into the new executive assistant position. Plaintiff was terminated on April 28, 2021.

**STANDARD OF DECISION**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* FED. R. CIV. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I. The Court will apply the *McDonnell Douglas* burden-shifting framework to Plaintiff's retaliation and discrimination claims.

As a threshold issue, the parties disagree over what standard governs Plaintiff's retaliation and discrimination claims. "A plaintiff can prove that her employer discriminated against her by providing either direct or circumstantial evidence of

discrimination." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons," while "[c]ircumstantial evidence allows the jury to draw a reasonable inference that discrimination occurred." *Id.* (internal citations omitted).

In the majority of cases, plaintiffs rely on indirect or circumstantial evidence to establish discrimination or retaliation, and the framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs. Under the *McDonnell Douglas* framework, the plaintiff is first required to "raise a genuine issue of material fact on each element of the prima facie case," at which point "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (abrogated on other grounds by *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir. 2018)). Thereafter, the burden shifts back to the plaintiff to "proffer evidence demonstrating the employer's reason is pretextual." *Id.*

WovenLife argues that the *McDonnell Douglas* framework governs. *See* Def.'s Mot. Summ. J. at 11.[3] Plaintiff, on the other hand, argues that there is direct evidence of discrimination, and, therefore, the *McDonnell Douglas* framework is inapplicable. Plaintiff claims that, in January of 2021, Mr. Wood "denied Plaintiff's reasonable accommodation request to work from home and said that she would be coughing up her toenails." Pl.'s Resp. at 12-13. Plaintiff contends that Mr. Wood's comment "was a direct reference to

[3] All citations to pleadings reference the ECF file-stamped page number at the top of each page.

Plaintiff's Chemotherapy treatments" and "demonstrates that the employment decisions regarding Plaintiff's request for accommodations were reached for discriminatory reasons." *Id.* at 13.

Upon consideration, the Court will apply the *McDonnell Douglas* burden-shifting framework to Plaintiff's retaliation and discrimination claims. Although in the Title VII context, the Tenth Circuit has held that the "classic example of direct evidence discrimination comes from *Trans World Airlines,* where the Supreme Court held that an explicit, mandatory age requirement was direct evidence of age discrimination. 469 U.S. at 121, 105 S.Ct. 613." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). Similarly, in *Tabor*, a decisionmaker at Hilti—a company that manufactures and sells tools and machinery of various sorts—explicitly stated "a view that women have inferior knowledge of tools and inferior ability to sell tools." *Id.* at 1217.

Here, Mr. Wood made, at most, a distasteful comment about the serious side effects he expected Plaintiff to experience while she underwent chemotherapy.[4] But where "the content and context of a statement allow it to be plausibly interpreted in two different ways—one discriminatory and the other benign—the statement does not qualify as direct evidence." *Id.* at 1216. This is not a case involving direct evidence of discrimination; therefore, the *McDonnell Douglas* burden-shifting framework applies to Plaintiff's retaliation and discrimination claims.

[4] During a meeting with Ms. Insomya and Mr. Wood in January 2021 (which Plaintiff recorded), Plaintiff agreed with Mr. Wood's characterization of this remark as "totally empathetic." *See* Def.'s Reply, Ex. 5 [Doc. No. 25-5] at 3.

**II. WovenLife is entitled to summary judgment on Plaintiff's retaliation and discrimination claims.**

**A. Plaintiff's retaliation claim fails as a matter of law.**

**1. Plaintiff's prima facie claim**

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a prima facie retaliation claim, Plaintiff must show: (1) that she engaged in a protected activity; (2) that she was "subjected to adverse employment action subsequent to or contemporaneous with the protected activity"; and (3) a "causal connection between the protected activity and the adverse employment action." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997)).

Here, Plaintiff contends that she engaged in three protected activities: (1) requesting that a recliner be moved into her office for times when she felt sick at work; (2) requesting that she be allowed to work from home; and (3) requesting more time to complete chemotherapy treatments before discussing her new potential role as an executive assistant. *See* Pl.'s Resp. at 13-15. The Court will address each in turn.

**i. Requesting a recliner and to work from home**

The Court assumes without deciding that each of the aforementioned activities are actually protected activities pursuant to the ADA. Because WovenLife does not contend

that Plaintiff was not subject to an adverse employment action subsequent to the aforementioned activities, Plaintiff's prima facie case rests on whether she can establish a causal connection between (1) her request for a recliner and to work from home and (2) her termination. The Court finds that she cannot.

Plaintiff relies exclusively on temporal proximity to establish a causal connection between the aforementioned activities and her termination. *See id.* at 15-16. In December of 2020, Plaintiff requested that a recliner be placed in her office. *Id.* at 14. Shortly thereafter, on January 4, 2021, Plaintiff requested that she be allowed to work from home. *Id.* at 14-15. WovenLife did not terminate Plaintiff until April 28, 2021—nearly four months after Plaintiff made each request. When attempting to establish the causal connection required, "[f]our months is too large a time gap to establish causal connection." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007); *see also Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) ("For example, an adverse employment action that happened more than three months after the protected activity was not entitled to a presumption of causation.").

The Court finds that Plaintiff fails to establish a causal connection between (1) her requests for a recliner and to work from home and (2) her termination.

**ii. Requesting more time to complete chemotherapy before discussing her new potential role as an executive assistant**

As for the third activity—requesting more time to complete chemotherapy treatments before discussing her new potential role as an executive assistant—there is sufficient temporal proximity for Plaintiff to clear the causal connection hurdle as to that

activity. And, again, WovenLife does not contend that Plaintiff was not subject to an adverse employment action subsequent to the aforementioned requests. However, as discussed next, WovenLife offers a legitimate, nondiscriminatory reason for terminating Plaintiff, and Plaintiff cannot show that WovenLife's reason was pretextual.

**2. WovenLife's proffered legitimate, nondiscriminatory reason for terminating Plaintiff**

WovenLife contends that the closure of the Hope Center, along with Plaintiff's refusing to provide requested information so that WovenLife could place Plaintiff in a new position, led to Plaintiff's termination. *See* Def.'s Mot. Summ. J. at 13-14. The Court finds that WovenLife has satisfied its burden in offering a legitimate, nondiscriminatory reason for terminating Plaintiff. Therefore, the burden shifts back to Plaintiff to show that WovenLife's reason was pretextual. *See MacKenzie*, 414 F.3d at 1274.

**3. Whether WovenLife's proffered legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual**

"A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Anderson*, 181 F.3d at 1179 (citation omitted). In determining pretext, it is not for the Court to decide whether WovenLife's reasons for its decision were "wise, fair, or even correct," so long as they were truly the reasons for the decision. *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1083 (10th Cir. 1999) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)). The Court's role is "to

prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000) (quotation and citation omitted). "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson*, 181 F.3d at 1179 (citing *Morgan*, 108 F.3d at 1323).

Upon consideration of the record presented, and viewing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has failed to present sufficient facts and evidence from which a reasonable finding of pretext could be made. The Court addresses each of Plaintiff's arguments in turn.

**i. April 2021 communications**

Plaintiff argues that certain communications between her and Mr. McCombs in April 2021 show that WovenLife's reason for terminating her was pretextual. Specifically, Plaintiff goes further and contends that these communications show that WovenLife's reason for terminating her was "<u>false</u>." Pl.'s Resp. at 20 (emphasis in original). Plaintiff relies in large part on Mr. McCombs informing her that he would need to speak to WovenLife's board of directors before attempting to make accommodations for Plaintiff. *See id.* However, according to Plaintiff, Mr. McCombs never got back to Plaintiff about any conversation he might have had with the board. *See id.*

WovenLife, on the other hand, contends that, "[a]lthough [Mr.] McCombs informed [Plaintiff] he would speak with WovenLife's Board to determine whether the Board was comfortable with [Plaintiff] not signing an employment agreement, that was not the basis for [Plaintiff's] termination." Def.'s Reply at 3 n.4. Instead, WovenLife argues that

"Plaintiff was terminated because her position was eliminated, and she failed to engage in discussions with WovenLife about which duties she could perform to transition her into a new position." *Id.*

Upon consideration, the Court finds that the April 2021 communications between Plaintiff and Mr. McCombs do not establish that WovenLife's proffered legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual. At most, the communications show that Mr. McCombs failed to follow through with a specific representation he purportedly made to Plaintiff. But that alone does not undermine WovenLife's proffered legitimate, nondiscriminatory reason for terminating Plaintiff—*i.e.*, because her position was being eliminated and she refused to engage in good-faith discussions about potential accommodations for her new executive assistant position. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007) ("'[I]f the record conclusively revealed some other, nondiscriminatory reason for the employer's [adverse employment] decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred,' the fact that the employer's explanation was unworthy of belief would no longer be sufficient to create an inference of discrimination.") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

**ii. WovenLife's prior treatment of Plaintiff**

Next, Plaintiff argues that numerous instances of WovenLife previously mistreating, or discriminating against, her show that WovenLife's proffered legitimate,

nondiscriminatory reason for terminating her was pretextual. First, Plaintiff argues that Mr. Wood commenting that Plaintiff, due to her chemotherapy treatments, would likely be "coughing up" her toenails establishes pretext. Pl.'s Resp. at 21. The Court disagrees and need look no further than Plaintiff's own words, as mentioned *supra*. During a recorded conversation between Plaintiff, Ms. Insomya, and Mr. Wood, Plaintiff agreed with Mr. Wood when he characterized his comment as "totally empathetic." Def.'s Reply, Ex. 5 at 3. And, when read in context with the entire conversation, it is difficult to see how one could affix a malicious motive to Mr. Wood's comment. In any event, a one-off remark made nearly four months before Plaintiff was terminated does not show that WovenLife's proffered reason for terminating Plaintiff was pretextual.

Second, Plaintiff argues that an instance of being locked out of her office establishes pretext. Pl.'s Resp. at 21. However, Plaintiff provides no evidence showing that, even assuming her office door was locked, anyone affiliated with WovenLife was locking the door or, to take it one step further, anyone affiliated with WovenLife was locking her door for any sort of discriminatory reason. Without any evidence showing discriminatory intent, this cannot serve as a basis for concluding that WovenLife's proffered reason for terminating Plaintiff was pretextual. *See Swackhammer*, 493 F.3d at 1168 ("[I]f the employer's differential treatment of similarly-situated employees is 'trivial or accidental or explained by a nondiscriminatory motive,' such treatment is insufficient to create an inference of discrimination.") (quoting *Kendrick*, 220 F.3d at 1232).

Third, Plaintiff argues that Ms. Insomya's insisting that Plaintiff be present in a picture for "picture day" establishes pretext. Pl.'s Resp. at 21. It is difficult to discern how

a one-off interaction regarding Plaintiff's presence in a picture undermines WovenLife's proffered legitimate, nondiscriminatory reason for terminating Plaintiff. Without any evidence showing that Ms. Insomya's insisting that Plaintiff appear in the picture was the result of any discriminatory animus, this cannot serve as a basis for concluding that WovenLife's proffered reason for terminating Plaintiff was pretextual.

Fourth, Plaintiff argues that WovenLife "prohibiting" her from communicating via text or emails establishes pretext. *Id.* at 22. As WovenLife notes, the record does not reflect any sort of official policy prohibiting Plaintiff—but not other WovenLife employees—from communicating via text or email. *See* Def.'s Reply at 5. Instead, the evidence shows that WovenLife preferred Plaintiff to communicate over the phone or in person so that miscommunications between the parties were kept to a minimum. *See* Def.'s Reply, Ex. 1 [Doc. No. 25-1] at 4-7. This cannot serve as a basis for concluding that WovenLife's proffered reason for terminating Plaintiff was pretextual. *See EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992) ("The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality.").

Fifth, Plaintiff argues that WovenLife not providing her with a recliner establishes pretext. Pl.'s Resp. at 22. However, Plaintiff testified that Ms. Insomya initially agreed to provide Plaintiff with a recliner for her office. *See* Pl.'s Resp., Ex. 1 at 11-12. The fact that, for whatever reason, WovenLife did not ultimately provide Plaintiff with a recliner for her office does not establish any discriminatory intent or animus, or otherwise undercut

WovenLife's proffered legitimate, nondiscriminatory reason for terminating Plaintiff.[5] This cannot serve as a basis for concluding that WovenLife's proffered reason for terminating Plaintiff was pretextual.

Sixth, Plaintiff argues that WovenLife requiring her to "create a calendar and submit a log of when she would be ill" establishes pretext. Pl.'s Resp. at 22. However, WovenLife had a reasonable basis for imposing such a requirement: "to ensure everyone was on the same page regarding which days should be treated as sick days and which days should be treated as work-from-home days." Def.'s Reply at 6. The record reflects that the requirement "demonstrates the great lengths to which WovenLife was attempting to accommodate [Plaintiff] and her illness." *Id.* This cannot serve as a basis for concluding that WovenLife's proffered reason for terminating Plaintiff was pretextual.

Having concluded that Plaintiff fails to present any evidence showing that WovenLife's proffered legitimate, nondiscriminatory reason for terminating Plaintiff was pretextual, the Court finds that Plaintiff's retaliation claim fails as a matter of law.

**B. Plaintiff's discrimination claim fails as a matter of law.**

**1. Plaintiff's prima facie claim**

The ADA prohibits a "covered entity" from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a prima

[5] The record does not reflect any reason why WovenLife, after initially agreeing to provide Plaintiff with the requested recliner in her office, failed to do so.

facie discrimination claim, Plaintiff must show: (1) that she is a disabled person as defined by the ADA; (2) that she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) that WovenLife terminated her because of her disability. *MacKenzie*, 414 F.3d at 1274. To survive summary judgment, Plaintiff must raise a genuine issue of disputed fact for each element of her prima facie case. *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021). WovenLife does not argue that Plaintiff is not disabled or that she is unqualified. However, WovenLife does argue that Plaintiff presents no evidence showing that WovenLife discriminated against her because of her cancer diagnosis. The Court agrees.

The framework governing the Court's determination as to whether WovenLife discriminated against Plaintiff because of her cancer diagnosis is succinctly set forth in *Lincoln*:

> Turning to the third element of a prima facie case, our inquiry focuses on whether the circumstances surrounding the adverse employment action give rise to an inference that the [action] was based on [the plaintiff's] disability. A plaintiff may establish an inference of discrimination through (1) actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, (2) preferential treatment given to employees outside the protected class, (3) a pattern of recommending the plaintiff for positions for which she is not qualified [or over-qualified], and (4) a failure to surface plaintiff's name for positions for which she is well-qualified.

900 F.3d at 1192-93 (internal citations and quotation marks omitted) (alterations in original). Although Plaintiff's burden "is not onerous, it is also not empty or perfunctory." *Butler v. City of Prairie Vill., Kan.,* 172 F.3d 736, 747–49 (10th Cir. 1999) (internal quotation omitted). Plaintiff must present "some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan*, 108 F.3d at 1323-24.

Here, Plaintiff has not presented any affirmative evidence that her cancer diagnosis was a determining factor in WovenLife's decision to terminate her. Although it is not entirely clear from Plaintiff's response, it appears that Plaintiff bases her entire argument on the purported fact that she "was discriminated against because of her disability when she was terminated on April 28, 2021." *See* Pl.'s Resp. at 18. But Plaintiff fails to offer any evidence—direct or circumstantial—showing that her cancer diagnosis was a "determining factor" in WovenLife's decision to terminate her. *See Morgan*, 108 F.3d at 1323-24. Instead, the undisputed facts show that WovenLife attempted to work with Plaintiff to accommodate her cancer diagnosis and treatments, even going so far as to offer her a new position with the same pay as the position that WovenLife chose to eliminate. Plaintiff's merely stating that she was fired because of her cancer diagnosis does not make it so. Plaintiff has failed to carry her burden in presenting "evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law." *Morgan*, 108 F.3d at 1324

**2. Pretext**

Even assuming Plaintiff could establish a prima facie discrimination claim, she fails to show that WovenLife's proffered legitimate, nondiscriminatory reason for terminating her was pretextual.[6] For the reasons discussed above in relation to Plaintiff's retaliation

---

[6] For the reasons given in relation to Plaintiff's retaliation claim, the Court finds that WovenLife easily meets its burden in providing a legitimate, nondiscriminatory reason for terminating Plaintiff.

claim, the Court finds that WovenLife's proffered reason for terminating Plaintiff was not pretextual.

**III. WovenLife is not entitled to summary judgment on Plaintiff's failure-to-accommodate claim.**

To "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A).

To establish a prima facie failure-to-accommodate claim, Plaintiff must show: "(1) she was disabled; (2) she was otherwise qualified; (3) she requested a plausibly reasonable accommodation; and (4) Defendant refused to accommodate her disability." *Norwood v. United Parcel Serv., Inc.*, 57 F.4th 779, 786 (10th Cir. 2023) (citing *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192 (10th Cir. 2022)). Once Plaintiff establishes a prima facie claim, the burden shifts to WovenLife to "present evidence either 'conclusively rebutting one or more elements of plaintiff's prima facie case' or 'establishing an affirmative defense." *Id.* If WovenLife meets this burden, "a district court grants the employer summary judgment 'unless the employee presents evidence establishing a genuine dispute about the affirmative defenses or rehabilitates any challenged elements of her prima facie case sufficiently to establish at least a genuine dispute of material fact.'" *Id.* (quoting *Dansie*, 42 F.4th at 786).

**A. Plaintiff's prima facie claim**

**1. Whether Plaintiff was disabled**

WovenLife does not contend that Plaintiff was not disabled for purposes of the ADA, and the record establishes that Plaintiff was disabled. The Court, therefore, finds that Plaintiff was disabled.

**2. Whether Plaintiff was otherwise qualified**

WovenLife does not contend that Plaintiff was unqualified, and the record establishes that Plaintiff was otherwise qualified. The Court, therefore, finds that Plaintiff was otherwise qualified.

**3. Whether Plaintiff requested a plausibly reasonable accommodation**

Plaintiff claims she requested the following plausibly reasonable accommodations: "that she be permitted to delay accepting the new position that was offered to her in April 2021 until she finished her chemotherapy treatments; that WovenLife provide a recliner for her to use in her office; and that she be allowed to work from home after her chemotherapy treatments." Def.'s Mot. Summ. J. at 18.

WovenLife does not take issue with the reasonableness of Plaintiff's request to work from home, but argues that Plaintiff's request for a recliner and request to delay accepting the new position were not reasonable accommodation requests. *See id.* Plaintiff, on the other hand, contends that allowing her to "use a recliner that the Defendant <u>already had available</u> and permitting Plaintiff until May to finish her Chemotherapy treatments would

not have cost the Defendant a single cent, nor would it have created an undue hardship on the operation of the business of WovenLife." Pl.'s Resp. at 24 (emphasis in original).

The Tenth Circuit has established a burden-shifting framework to determine whether a requested accommodation is reasonable:

> First, the employee must show that an accommodation appears reasonable on its face. An accommodation is not reasonable on its face if the proposed accommodation would not enable the employee to perform the essential function at issue. Second, if the employee meets this initial burden, the burden of production then shifts to the employer to present evidence of its inability to accommodate. At that point, the employer must show special circumstances that prove undue hardship in the particular situation. Third, if the employer presents such evidence, then the burden shifts back to the employee who must com[e] forward with evidence concerning [his] individual capabilities and suggestions for possible accommodations to rebut the employer's evidence.

*Dansie*, 42 F.4th at 1194 (citing and quoting *Aubrey v. Koppes*, 975 F.3d 995, 1010 (10th Cir. 2020)) (internal citations and quotation marks omitted).

The Court finds that Plaintiff has sufficiently established that her request for a recliner and request to work from home appear reasonable on their face. The Court further finds that WovenLife has failed to produce any evidence of its inability to provide either of the two requested accommodations.

However, because it would not have enabled Plaintiff to perform the essential functions of her job, the Court finds that Plaintiff has failed to establish that her request for more time before accepting the new position was reasonable on its face. When WovenLife offered Plaintiff the new position, it understood that there were certain duties that, due to her ongoing chemotherapy treatments, Plaintiff might not be able to perform at that time. Accordingly, WovenLife asked Plaintiff to identify which duties she could perform and

where an accommodation might be needed so that Plaintiff could perform her duties. Plaintiff refused to meaningfully engage in that collaborative process, and, although Plaintiff appears to claim that finishing her chemotherapy treatments might have allowed her to engage, it is wholly unclear how more time would have allowed her to perform her essential job functions as they currently stood. Therefore, Plaintiff's request for more time before accepting the newly offered position cannot serve as the basis for her failure-to-accommodate claim.

**4. Whether WovenLife refused to accommodate Plaintiff's disability**

Although the Court finds the request was reasonable on its face, Plaintiff's request to work from home cannot serve as a basis for her failure-to-accommodate claim because WovenLife did not refuse to allow Plaintiff to work from home. Plaintiff testified at her deposition that Mr. Wood and Ms. Insomya told her during a January 25, 2021 meeting that Plaintiff was allowed to work from home, and that Plaintiff understood that she was allowed to work from home. *See* Def.'s Mot. Summ. J., Ex. 5 [Doc. No. 23-5] at 10.[7] Further, the record shows that Plaintiff received instruction from Ms. Insomya regarding work-from-home procedures and that Plaintiff had, in fact, been working from home. *See* Def.'s Mot. Summ. J., Ex. 6 [Doc. No. 23-6]. The Court finds, therefore, that Plaintiff's request to work from home cannot serve as a basis for her failure-to-accommodate claim.

[7] Plaintiff does not address her testimony regarding the January 25, 2021 meeting in her response to WovenLife's undisputed material fact 9. *See* Pl.'s Resp. at 5-6.

### B. WovenLife's evidence either conclusively rebutting one or more elements of Plaintiff's prima facie case or establishing an affirmative defense

Having found that Plaintiff met her burden to establish a prima facie case as it relates to her request for a recliner, the Court shifts its focus to whether WovenLife presents evidence conclusively rebutting one or more elements of Plaintiff's prima facie case or establishing an affirmative defense. *See Norwood*, 57 F.4th at 786.

Upon consideration, the Court finds that WovenLife has failed to either *conclusively* rebut one or more elements of Plaintiff's prima facie case or establish an affirmative defense as it relates to Plaintiff's request for a recliner. *See Norwood*, 57 F.4th at 786. Although WovenLife claims that providing a recliner would not have allowed Plaintiff to perform the essential functions of her job, no undisputed material fact confirms that claim. Perhaps Plaintiff, on days when she felt ill, could have gone into the office and worked had WovenLife provided her with the recliner for periodic rest. The Court agrees with WovenLife that the law does not require it to provide Plaintiff with the accommodation of her choosing, or an accommodation that simply makes Plaintiff's working conditions more comfortable. But the Court cannot, on the record before it, find that WovenLife is entitled to summary judgment as it relates to Plaintiff's request for a recliner.

## CONCLUSION

WovenLife's Motion for Summary Judgment [Doc. No. 23] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court orders as follows:

- WovenLife is entitled to summary judgment on Plaintiff's ADA retaliation claim;

- WovenLife is entitled to summary judgment on Plaintiff's ADA discrimination claim; and

- WovenLife is entitled to summary judgment on Plaintiff's ADA failure-to-accommodate claim, to the extent such claim relies on Plaintiff's request for more time before accepting the new position or her request to work from home. However, Plaintiff's failure-to-accommodate claim, to the extent such claim relies on Plaintiff's request for a recliner, remains for trial.

**IT IS SO ORDERED** this 22nd day of February, 2024.

TIMOTHY D. DeGIUSTI
Chief United States District Judge